**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>vs.<br><br>JAMAL DEAN and LEVON DEAN, Jr.<br><br>Defendants. | No. CR13-4082-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANTS' MOTIONS FOR JUDGMENT OF ACQUITTAL AND NEW TRIAL** |

_____

**TABLE OF CONTENTS**

*I.* ***INTRODUCTION AND BACKGROUND***............................................................2
   *A.*   *Factual Background* ...........................................................................2
   *B.*   *Procedural Background* .....................................................................5
*II.*  ***LEGAL ANALYSIS*** .......................................................................................7
   *A.*   *Motions For Judgment Of Acquittal* .................................................7
      *1.*   *Standards* ................................................................................7
      *2.*   *Analysis* ..................................................................................8
          *a.*   *Multiple conspiracies argument* .................................8
          *b.*   *Object of the conspiracy* ..........................................10
          *c.*   *Challenge to Hobbs Act convictions* .........................11
          *d.*   *Levon's challenge to his firearms convictions* ...........13
              *i.*   *Possession of the rifle* ....................................13
              *ii.*   *Possession in furtherance* ..............................13
          *e.*   *Carjacking challenge* ..............................................14
   *B.*   *Motions For New Trial* ..................................................................15
      *1.*   *Standards* ..............................................................................15
      *2.*   *Analysis* ................................................................................16
*III.* ***CONCLUSION*** ............................................................................................17

# I. INTRODUCTION AND BACKGROUND

In resolving defendants Jamal Dean and Levon Dean, Jr.'s motions for judgment of acquittal, I must "view the evidence in the light most favorable to the guilty verdict, giving the [prosecution] the benefit of all reasonable inferences that may be drawn from the evidence." *United States v. Basile*, 109 F.3d 1304, 1310 (8th Cir. 1997). Thus, viewed in the light most favorable to the prosecution, the trial evidence established the following facts.

## A. Factual Background

On April 15, 2013, Jessica Cabell visited Reggie Galvin, a friend, at Galvin's house in South Sioux City, Nebraska. Sarah Berg was at Galvin's house when Cabell arrived. Cabell, a prostitute, mentioned to Berg that she had a "date" with Jeffrey Rollinger scheduled for that evening. Rollinger was a dealer of both methamphetamine and marijuana. The women realized that Rollinger was a customer they had in common. Rollinger had twice previously paid Cabell with money and drugs for sex. Rollinger had also previously provided Berg with methamphetamine in exchange for sex. Cabell offered to try "to play" Berg into her date with Rollinger. Berg accepted Cabell's offer. Previously, Rollinger had stolen $400 from Berg. Berg told Cabell and Galvin that Rollinger owed her money and that she wanted to get it back that night. Galvin told Berg that she needed "more muscle" to get her money back. Tr. at 151. Berg agreed and Galvin suggested that the Deans provide that muscle.

Rollinger received several text messages from Cabell in which she indicated that she and a female friend of hers wanted "to party and hangout."[1] Tr. at 42. Rollinger, an admitted drug dealer, interpreted Cabell's message to mean that she and her friend wanted to do drugs and have sex with him. Cabell told Rollinger that it was going to cost $150 to have a two-girl date with him. Rollinger agreed to pay that price. He checked into the Palmer House Motel between 7:00 and 7:30 p.m., and waited for Cabell and her friend.

Cabell and Berg were at Galvin's house when the Deans arrived. Cabell did not know the Deans. Cabell, Berg, and the Deans drove to the Palmer House Motel for Cabell's "date" with Rollinger. Cabell thought the Deans were with them because Berg had previously encountered "problems" with Rollinger. Berg had told Cabell that Rollinger had previously been rough with her and that she wanted protection. Berg and the Deans' plan was to go to the Palmer House to take money and drugs from Rollinger. Berg assumed that Rollinger had money and drugs since he had set up a date with Cabell and previously possessed drugs.

Cabell arrived at the hotel after 8:30 p.m., then she and Rollinger smoked some methamphetamine and waited for Berg to come to the room. When Berg arrived, Cabell opened the door and Berg and the Deans stormed into the room. Berg screamed, "You think you can steal from me. . ." Tr. at 48. Jamal pulled a gun on Rollinger and demanded that he give them his money. While Jamal was doing this, Levon was ransacking the room looking for money and drugs. It appeared to Rollinger that the Deans were working in concert.

---

[1] Cabell did not tell Rollinger that her friend was Berg. Berg had requested that Cabell not tell Rollinger that she was the second woman because she wanted to surprise him.

3

Jamal hit Rollinger in the head with the gun and Berg took Rollinger's car keys and cellphone. The trio also took a pipe containing methamphetamine. As they were leaving, Jamal threatened, "If you call the cops, I'll kill you." Tr. at 54. Berg drove away in Rollinger's car with the Deans. Rollinger then called 911 from the motel manager's office and reported the robbery.

After the robbery, Cabell returned to Galvin's house. Berg and the Deans then showed up. The Deans were upset that Rollinger did not have any money. Berg and Cabell began arguing over whether Cabell had gotten money from Rollinger before Berg arrived. Berg texted two individuals, Wheezie and Chief, about selling or stripping Rollinger's car, a 2011 Kia Optima.

On April 24, 2013, Craig Barclay was living in a house in the Leeds neighborhood of Sioux City, Iowa. Barclay was selling methamphetamine out of the house. At approximately 5:30 a.m. he was awakened by Levon. Startled, Barclay jumped out of bed. In response, Levon put his hand on Barclay's shoulder and told him, "Sit the fuck down. He's for real." Tr. at 194. At this point, Barclay noticed that Jamal had a rifle pointed at him. Levon then demanded Barclay's wallet. Barclay gave Levon his wallet. Levon then told Barclay to stand up and empty his pockets. Barclay again complied and 20 grams of methamphetamine fell out of his pocket. Levon scooped up the methamphetamine. Jamal then hit Barclay on the top of his head with the rifle. In addition to taking Barclay's drugs, the Deans took $200 to $300, a digital scale, and a dresser drawer full of electronic gear. Jamal pointed the rifle at Hope Marsh, who had been living at Barclay's house, and ordered her to pack up her stuff and that she was going to be living with the Deans. Marsh packed her belongings and went with the Deans. As he was leaving, Levon warned Barclay, You had better not call the cops." Tr. at 198. After they left Barclay's house, the Deans stole Barclay's two cars, a 1998 Chevrolet Malibu and a 2000 Chevrolet Impala. Jamal drove away in the Malibu. Levon,

4

who now had the rifle, directed Hope Marsh to follow Jamal in the Impala. Barclay's Malibu was manufactured in Oklahoma City, Oklahoma, and his Impala was manufactured in Ontario, Canada.

On April 29, 2013, Katie Ward, a friend of the Deans, picked Jamal up in her car. Also in Ward's car were her three children and Sam Lam. As she was driving, Ward was smoking marijuana with Jamal and Lam. Ward saw a marked Sioux City Police patrol car make a u-turn, activate its lights, and come after her car for a traffic stop. Jamal became nervous and fidgety. He told Ward to "go" and explained that he had a warrant out for his arrest. Eventually, Ward stopped her car. Jamal got out, pulled a Mossberg 22 rifle, and shot it in an attempt to escape capture. The Mossberg 22 rifle Jamal used was manufactured in Brazil and traveled in interstate commerce to arrive in Iowa. The ammunition Jamal used was manufactured in Minnesota.

### B.  *Procedural Background*

On April 14, 2014, an eleven count Third Superseding Indictment was returned charging Jamal, Levon, and Berg with: (1) conspiracy to interfere with commerce by robbery, in violation of 18 U.S.C. § 1951 (Count 1); interference with commerce by robbery, in violation of 18 U.S.C. §§ 2 and 1951 (Counts 2 and 3); carjacking, in violation of 18 U.S.C. §§ 2 and 2119(1) (Counts 4 and 5); possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 2, 924(c)(1)(A)(ii), and 924(c)(1)(C)(i) (Counts 6 and 7); being prohibited persons in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 922(g)(3), and 924(a)(2) (Counts 8 and 9); and interstate transportation of a stolen vehicle, in violation of 18 U.S.C. §§ 2 and 2312 (Counts 10 and 11). All three defendants filed motions to sever in which they argued that Berg should be severed and tried separately. In addition, Jamal and Levon sought to

sever Count 8 on grounds that it was improperly joined with the other counts. United States Magistrate Judge Leonard T. Strand found that Berg demonstrated that she would be prejudiced in a joint trial with the Deans and he severed her trial from that of the Deans. In addition, Judge Strand found that Count 8 had been misjoined and ordered a separate trial on Count 8, against Jamal.[2]

Trial on all but Count 8 against began Jamalon August 25, 2014. The prosecution presented eighteen witnesses in its case in chief. On August 27, 2014, at the close of the prosecution's evidence, both Jamal and Levon made motions for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, which I denied. However, I granted the prosecution's motion to dismiss Count 11. Neither of the Deans presented any evidence. On August 29, 2014, the jury returned a verdict in which it found Jamal guilty on the offenses charged in Counts 1,2, 3, 4, 6, 7 and 9, and acquitted him of the charges in Counts 5 and 10. The jury found Levon guilty of the charges in Counts 1, 2, and 3, and acquitted him of the charges in Counts 4, 5, and 9. In addition, Levon was acquitted of the charges in Counts 6 and 7, but was found guilty on each count of the lesser-included offense of "possessing a firearm in furtherance of a crime of violence."

On September 5, 2014, the Deans requested, and I granted, an extension of time to file their post-trial motions until after the trial transcript was completed. On October 30, 2014, the Deans each filed a motion for judgment of acquittal, pursuant to Federal Rule of Criminal Procedure 29(c), or, in the alternative, a motion for a new trial, pursuant to Federal Rule of Criminal Procedure 33 (docket nos. 317 and 318). The prosecution, after obtaining an extension of time, filed its responses to the Deans' motions on November 20, 2014. Neither Dean filed a reply.

---

[2] On May 5, 2014, Berg pleaded guilty to Counts 1, 2, 4, and 10 of the Third Superseding Indictment pursuant to a cooperation plea agreement and subsequently testified against the Deans.

6

## II. LEGAL ANALYSIS
### A. *Motions For Judgment Of Acquittal*
#### 1. *Standards*

Federal Rule of Criminal Procedure 29 governs the Deans' motions for judgment of acquittal. Rule 29(a) provides: "After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." FED. R. CRIM. P. 29(a). When the defendant moves for judgment of acquittal after the prosecution rests,

> [t]he court may reserve decision on the motion, proceed with the trial (where the motion is made before the close of all the evidence), submit the case to the jury, and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict.

FED. R. CRIM. P. 29(b). If the jury returns a guilty verdict, the defendant may renew a motion for a judgment of acquittal "within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." FED. R. CRIM. P. 29(c)(1). "If the court reserve[d] decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved." FED. R. CRIM. P. 29(b). Here, the Deans have renewed their motions for judgment of acquittal. Thus, I may consider the entire trial record in deciding whether to grant the Deans' motions. A judgment of acquittal is only appropriate if "the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "The standard for determining the sufficiency of the evidence is strict, and a guilty verdict should not be lightly overturned." *United States v. Jiminez-Perez*, 238 F.3d 970, 972-73 (8th Cir. 2001) (citing *United States v. Ryan*, 227 F.3d 1058, 1063 (8th Cir. 2000)); *see United States v. Peneaux*, 532 F.3d 882, 890 (8th Cir. 2005); *United States v. Stroh*, 176 F.3d

439, 440 (8th Cir. 1999). "Sufficient evidence exists to support a verdict if 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Jiminez-Perez*, 238 F.3d at 972 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Thus, I may grant a judgment of acquittal "only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Tate*, 633 F.3d 624, 628 (8th Cir. 2011) (quoting *United States v. Morales*, 445 F.3d 1081, 1084 (8th Cir. 2006)) (internal marks omitted). As I noted above, I must "'view the evidence in the light most favorable to the guilty verdict, granting all reasonable inferences that are supported by that evidence.'" *Id.* (quoting *United States v. Milk*, 447 F.3d 593, 598 (8th Cir. 2006)).

### 2. *Analysis*

Because of an overlap in the issues raised by the Deans' motions, I will address the issues seriatim.

#### a. *Multiple conspiracies argument*

Jamal argues that the prosecution's proof as to count one was insufficient because the evidence showed multiple conspiracies, not the single conspiracy as charged in the Third Superseding Indictment. Jamal contends that the alleged multiple conspiracies created a variance between the indictment and the proof at trial. To prove a Hobbs Act conspiracy, the prosecution must prove beyond a reasonable doubt that "(1) there was an agreement to achieve an illegal purpose, (2) that the defendant knew of the agreement, and (3) that the defendant knowingly participated in the conspiracy." *McAdory*, 501 F.3d at 871. Thus, to prove the Deans' guilt on Count 1, conspiracy to commit robberies interfering with commerce, the prosecution was required to show that there was a conspiracy to commit robberies of drug traffickers, that the Deans each knew of the conspiracy, that the Deans each intentionally joined the conspiracy, and that a member

8

of the conspiracy committed an overt act in furtherance of the conspiracy. *See United States v. McAdory*, 501 F.3d 868, 871 (8th Cir. 2007). On the question of single versus multiple conspiracies, the Eighth Circuit Court of Appeals has observed that:

> Whether trial evidence established a single conspiracy "is determined by the totality of the circumstances," including consideration of the nature and location of activities and events, identities of the co-conspirators, and the time frame in which the acts occurred. [*United States v. Slagg*, 651 F.3d 832 at 841–42 (8th Cir. 2011)] (quotation omitted). In addition, "whether the government has proven a single conspiracy or multiple conspiracies is to be resolved by the jury since it is a question of fact as to the nature of the agreement." *United States v. Riebold*, 135 F.3d 1226, 1230–31 (8th Cir.1998).

*United States v. McCauley*, 715 F.3d 1119, 1123 (8th Cir. 2013). Moreover, it is well established that "[a] conspiracy need not be established by direct evidence of an explicit agreement; instead, a "'"tacit understanding among co-conspirators may be, and often will be, inferred from circumstantial evidence."'" *McAdory*, 501 F.3d at 871 (quoting *United States v. Hakim*, 491 F.3d 843, 845–46 (8th Cir. 2007) (quoting in turn *United States v. Winston*, 456 F.3d 861, 866 (8th Cir. 2006)).

Taken in the light most favorable to the prosecution, the evidence at trial was sufficient to support the finding of a single conspiracy. First, the Deans acted in concert in committing both the robberies of Rollinger and Barclay. Second, the targets of both robberies were believed to possess methamphetamine. Third, both of the targeted robberies occurred in Sioux City. Finally, all of the acts occurred over a relatively short two-week period. Thus, I find that the evidence supports the existence of a single conspiracy.

9

### b. *Object of the conspiracy*

Jamal also argues that there was insufficient evidence to establish that he knew the object of the conspiracy was to rob drug dealers. This argument is unpersuasive. The prosecution does not need to demonstrate proof of an express agreement among co-conspirators. See *United States v. Jiminez*, 487 F.3d 1140, 1146 (8th Cir. 2007); *United States v. Cabrera*, 116 F.3d 1243, 1244 (8th Cir. 1997). Instead, the prosecution need "only establish a tacit understanding between the parties, and this may be shown wholly through the circumstantial evidence of [the defendant's] actions." *Cabrera*, 116 F.3d at 1245 (internal quotation marks omitted). "[B]ecause the nature of conspiracy entails secrecy, the agreement and members' participation in [the conspiracy] must often be established by way of inference from the surrounding circumstances." *Id*. (internal quotation marks omitted).

Contrary to Jamal's argument, the prosecution presented sufficient evidence to support the conclusion that Jamal knew that the object of the conspiracy was to rob drug dealers. First, both Barclay and Rollinger were admitted drug dealers. Second, Jamal knew that they were both drug dealers before each robbery. As Berg explained, the robbery of Rollinger was timed to coincide with his "date" with Cabell because Rollinger would likely have money and methamphetamine with him for his "date." Tr. at 50. Jamal knew the plan. Similarly, Barclay was generally known in the Deans' social circle to be a drug dealer. The Deans had been to Barclay's house before the date of the robbery and he had provided methamphetamine to them. Third, the robbery participants demanded drugs from their victims. Thus, in light of these facts, I conclude that the prosecution presented more than sufficient evidence to support Jamal's conspiracy conviction.

### *c.  Challenge to Hobbs Act convictions*

Both of the Deans argue that the evidence was insufficient to establish that either robbery sufficiently affected commerce to support their convictions under the Hobbs Act. "The Hobbs Act, 18 U.S.C. § 1951, is the federal robbery statute." *United States* v. Mann, 701 F.3d 274, 295 (8th Cir. 2012). It criminalizes robbery that "in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce" 18 U.S.C. § 1951(a), and the Eighth Circuit Court of Appeals has held that the statute "reaches to the full extent of Congress' power to regulate interstate commerce." *United States v. McCraney*, 612 F.3d 1057, 1064 (8th Cir. 2010) (citing *United States v. Quigley*, 53 F.3d 909, 910 (8th Cir. 1995)). The Eighth Circuit Court of Appeals has recognized that "'a statute with an express jurisdictional nexus to interstate commerce may be applied in circumstances where the actual connection to interstate commerce is small.'" *McAdory*, 501 F.3d at 871 (quoting *United States v. Dobbs*, 449 F.3d 904, 912 (8th Cir. 2006)). "'Any other rule would leave the federal government helpless to deal with criminal acts that have an individually trivial but cumulatively significant effect on the movement of goods and services across state and international boundaries.'" *United States v. Taylor*, 754 F.3d 217, 223 (4th Cir. 2014) (quoting *United States v. Thomas*, 159 F.3d 296, 298 (7th Cir. 1998)). Thus, the prosecution "need prove only a minimal effect on interstate commerce to support a conviction under the Hobbs Act." *McCraney*, 612 F.3d at 1064; *see United States v. Williams*, 308 F.3d 833, 838 (8th Cir. 2002).

Both Rollinger and Barclay were known drug dealers at the time they were robbed by the Deans on April 15 and 24, 2013. Rollinger sold methamphetamine in both Iowa and South Dakota. Barclay also sold methamphetamine and his drug trafficking operation had close to 100 customers in Iowa, South Dakota, and Nebraska. He purchased his methamphetamine from dealers in South Sioux City and Omaha, Nebraska. It is well

settled that the traffic in illegal drugs falls within the reach of the Hobbs Act. *See McCraney*, 612 F.3d at 1065; *see also Taylor*, 754 F.3d at 223; *United States v. Walker*, 657 F.3d 160, 182 (11th Cir. 2011); *United States v. Needham*, 604 F.3d 673, 678 (2nd Cir. 2010); *United States v. DeCologero*, 530 F.3d 36, 68 (1st Cir. 2008); *United States v. Taylor*, 480 F.3d 1025, 1027 (11th Cir. 2007); *United States v. Ostrander*, 411 F.3d 684, 692 (6th Cir. 2005); *United States v. Rodriguez*, 360 F.3d 949-955-56 (9th Cir. 2004); *United States v. Williams*, 342 F.3d 350, 355 (4th Cir. 2003); *United States v. Vasquez*, 267 F.3d 79, 90 (2d Cir. 2001); *Thomas*, 159 F.3d at 297.

While the Deans contend that the prosecution failed to prove the jurisdictional element, I find that the jury could rationally have found that the prosecution met its burden. Rollinger had arranged a "date" with Cabell and another woman in exchange for $150. Cabell also expected that Rollinger would provide her with methamphetamine to smoke. As a result of this arrangement, Cabell traveled from South Sioux City, Nebraska, to Rollinger's room at the Palmer House in Sioux City, Iowa. As Berg explained at trial, the robbery of Rollinger was timed to coincide with his "date" with Cabell because Rollinger would likely have money and methamphetamine with him for his "date." Tr. at 50. The Deans robbed Rollinger of the methamphetamine he had with him, his methamphetamine pipe, and what money he had with him. The Deans taking of that methamphetamine, thus, disrupted the movement of a commodity in interstate commerce. This proof was sufficient to support the jury's verdict on Count 2. *See Thomas*, 159 F.3d at 297–98 (affirming Hobbs Act conviction for robbery of $675 which disrupted a "small" crack cocaine sale and "obstructed commerce in a pretty literal sense").

I reach the same conclusion with respect to the Deans' robbery of Barclay. In *United States v. Cox*, 942 F.2d 1282 (8th Cir. 1991), the Eighth Circuit Court of Appeals held that the robbery of cash, three ounces of cocaine, and a firearm from the private

residence of a drug trafficker violated the Hobbs Act, where the evidence showed the interstate character of the victim's drug trade. *Id.* at 1286. I see no material distinction between this case and *Cox*. The evidence here showed the methamphetamine Barclay sold originated out of state, that Barclay sold it to out-of-state customers, and that the robbery depleted Barclay's supply of methamphetamine that could have been sold in interstate commerce. This proof was sufficient to support the jury's verdict on Count 3. Accordingly, I reject the Deans' argument that the prosecution failed to establish a jurisdictional nexus between interstate commerce and their robberies of Rollinger and Barclay. This portion of the Deans' motions are denied.

### d. *Levon's challenge to his firearms convictions*

Levon contends that the evidence at trial was insufficient to establish that he possessed the Mossberg 22 rifle in furtherance of the robberies, either personally or under an aiding and abetting theory, or that he possessed that rifle. I will discuss each of Levon's arguments in turn, beginning with his later argument that he never possessed the rifle.

#### i. *Possession of the rifle*

Levon argues that he never possessed the Mossberg rifle. Marsh, however, testified that, at the Barclay robbery, Levon had the Mossberg rifle when he got into the Impala and ordered her to follow Dean. Tr. at 262-63. The verdict on Count 8 is therefore supported by sufficient evidence and this part of Levon's motion is denied.

#### ii. *Possession in furtherance*

Levon argues that he never personally possessed the Mossberg rifle in furtherance of either of the robberies, and that he did not aid and abet its possession, because he did not know of the rifle's presence at the robberies in time to opt to walk away. *See Rosemond v. United States*, 134 S. Ct. 1240, 1249-50 (2014) (holding that a person aids or abets a firearms crime when he participates in joint criminal activity, seeks to promote

13

its objective, and knows that a confederate has a gun, in time to "do something with [that knowledge]—most notably, opt to walk away."). The record, again, belies Levon's aid and abet argument. Reginald Galvin testified that he saw Jamal pull the Mossberg rifle out of his pants shortly before the robbery of Rollinger. Tr. at 84. Galvin also testified that Levon was within a couple feet of his brother at the time. Tr. at 84. Both Susan Leyva and Katie Ward testified that Jamal had an obvious distinctive "gun walk" when he had the rifle in his pants. Jamal and Levon rode together in the back seat of Cabell's car to the Palmer House. In *Rosemond*, a confederate pulled a gun unexpectedly, leaving other participants without an opportunity to drop out of the venture. Here, by contrast, the jury could have reasonably concluded that Levon knew that Jamal had the rifle with him before the robbery of Rollinger and that he continued to cooperate with Jamal after learning that he had and was using the rifle.

Levon's argument is even weaker with respect to the robbery of Barclay. After the robbery of Rollinger, Levon could hardly have been surprised that Jamal had the rifle with him or that he would use it when they went to rob Barclay. Moreover, Levon actively possessed the rifle during the escape phase of the Barclay robbery. This proof was sufficient to support the jury's verdict. Thus, this portion of Levon's motion is also denied.

### e. *Carjacking challenge*

Jamal argues that there was insufficient evidence to establish that he intended to cause death or serious bodily injury during the carjacking of Rollinger's car. This argument is also unpersuasive.

The United States Supreme Court has held that "[t]he intent requirement of § 2119 is satisfied when the Government proves that at the moment the defendant demanded or took control over the driver's automobile the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car (or, alternatively, if unnecessary to

14

steal the car)." *Holloway v. United States*, 526 U.S. 1, 12 (1999). There was sufficient evidence from which the jury could conclude that Jamal possessed the requisite intent to cause death or serious bodily injury at the moment he took control over Rollinger's car. For example, Jamal threatened Rollinger, brandished the rifle to demand Rollinger's car keys, and struck Rollinger in the head with the rifle when Rollinger reached for the keys. Jamal's assault left Rollinger bleeding and required him to go to the hospital for treatment. Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence from which the jury could conclude that Jamal intended to kill or seriously harm Rollinger when he took control of his car. Thus, this portion of Jamal's motion is denied.

### B. *Motions For New Trial*

#### *1. Standards*

Federal Rule of Criminal Procedure 33 governs defendants' motions for new trial. Rule 33(a) provides: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a). I have broad discretion in considering a motion for new trial. *See United States v. Garcia*, 569 F.3d 885, 889 ((8th Cir. 2009); *United States v. Peters*, 462 F.3d 953, 957 (8th Cir. 2006). I may "weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002) (quoting *White v. Pence*, 961 F.2d 776, 780 (8th Cir. 1992)) (internal quotation marks omitted); *see Garcia*, 569 F.3d at 889; *United States v. Starr*, 533 F.3d 985, 999 (8th Cir. 2008). However, I "must exercise the Rule 33 authority 'sparingly and with caution.'" *Campos*, 306 F.3d at 579 (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)). I "should grant a new trial only if 'the evidence weighs heavily enough against the verdict that a miscarriage of justice may

15

have occurred.'" *Peters*, 462 F.3d at 957 (quoting *United States v. Rodriguez*, 812 F.2d 414, 417 (8th Cir. 1987)). As the Eighth Circuit Court of Appeals has explained:

> When a motion for new trial is made on the ground that the verdict is contrary to the weight of the evidence, the issues are far different from those raised by a motion for judgment of acquittal. The question is not whether the defendant should be acquitted outright, but only whether he should have a new trial. The district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses. If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury.

*United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980); *see United States v. Johnson*, 474 F.3d 1044, 1050-51 (8th Cir. 2007) (repeating applicable standard of review).

### 2. *Analysis*

The Deans, alternatively, argue that I should grant a new trial. Levon does not advance any grounds for granting a new trial. Jamal argues that I should grant a new trial because the verdict is contrary to the weight of the evidence and constitutes "a serious miscarriage of justice." Based on the evidence supporting the jury's verdicts, I cannot conclude "'that a serious miscarriage of justice may have occurred.'" *United States v. Malloy*, 614 F.3d 852, 862 (8th Cir. 2010) (quoting *Lincoln*, 630 F.2d at 1319). Jamal also argues that I should grant a new trial in the interests of justice because I did not give his proposed jury instructions. "A defendant is entitled to a specific jury instruction that conveys the substance of his request if his request is timely, it is supported by evidence in the case, and is a correct statement of the law." *United States v. Williams*, 605 F.3d

556, 567 (8th Cir. 2010) (quoting *United States v. Cruz-Zuniga*, 571 F.3d 721, 725 (8th Cir. 2009) (internal quotations and citations omitted)). However, a defendant "'is not entitled to a particularly-worded instruction when the instructions actually given by the trial court adequately and correctly cover the substance of the requested instruction.'" *Id.* (quoting *United States v. Long*, 977 F.2d 1264, 1272 (8th Cir. 1992) (quoting in turn *United States v. Lewis*, 718 F.2d 883, 885 (8th Cir. 1983)). A new trial is required on account of my refusal to give a proposed jury instruction only if that instruction's omission was prejudicial. *See United States v. Tillman*, 765 F.3d 831, 834 (8th Cir. 2014); *United States v. Espinoza*, 684 F.3d 766, 783 (8th Cir. 2012); *United States v. White Calf*, 634 F.3d 453, 456 (8th Cir. 2011). However, Jamal does not explain how he was prejudiced by my refusal to give any of his proposed jury instructions. Thus, he has not established that he was prejudiced by their omission and I find that he was not prejudiced. Accordingly, I deny the Deans' motions for new trial.

### III. CONCLUSION

For the reasons discussed above, both Jamal Dean and Levon Dean's post-trial motions for judgment of acquittal and new trial are denied.

**IT IS SO ORDERED**.
**DATED** this 23rd day of December, 2014.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA